Damien Natha Calhoun v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-039-CR

     DAMIEN NATHA CALHOUN,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 2001-858-C
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

     Damien Natha Calhoun was found guilty of murder by a jury and sentenced to life
imprisonment. He raises one issue on appeal: was it harmful error for the trial court to overrule
his objections to the prosecutor’s comments in closing arguments? Finding no error, we will
affirm the judgment.
BACKGROUND
      Twenty-one year old Jimmy Taplin had resided with his girlfriend, Kimberly Duffy and her
three young children for about two years at the Parkside Apartments in Waco, a government
housing project. On the morning of September 29, 1999, he awoke, kissed Kimberly, and left her
some cash before leaving for the day. She did not speak to him, then, because she was angry with
him. She had heard through the proverbial grapevine that Taplin had robbed a man named Willie
McDonald (“Little Willie”) of drugs or money just days before.
      That afternoon around three o’clock, Taplin sat in the breezeway of one of the apartment
buildings, waiting to greet Kimberly’s children as they came home from school. He sat beneath
the stairs with several other young people from the neighborhood: Demetra (“Dee”) Duffy
(Kimberly’s sister), Tiffanie Duffy and Kevin Duffy (Kimberly’s cousins), Corey McLennan,
LaToya Caufield, Derrick Childers, and Trolecia Tyler. From where they sat, they could see the
parking lot, the driveway that led to the parking lot, and that portion of Tennessee Avenue
between Ninth Street and Tenth Street. Before long, Roy Eugene Hardin (“Big Gene”) drove up
and pulled his Cadillac into the driveway leading to the parking lot. He stopped there because he
recognized Taplin and some of the others, and because he wanted to check the transmission fluid
in his car.
      A few minutes later, several men approached the group. Although the evidence conflicts on
the number and description of the men who approached, six witnesses identified Little Willie and
Calhoun as two of them, and Frank Robinson testified that he was with them.


 Although there are
some discrepancies in the testimony regarding the sequence of events over the next several
moments, it is clear that a fistfight erupted between Little Willie, who was angry at Taplin for
stealing his drugs, and Taplin, who, according to Robinson, had offered to return them. At some
point Calhoun joined the fight, eventually pushing Taplin against the passenger side of Big Gene’s
car. Although one witness testified that the gun involved in this crime belonged to Robinson,
several witnesses said that a gun either fell from or was yanked from Taplin’s pants. Calhoun
grabbed this gun and pointed it at Taplin. The testimony conflicts as to whether Taplin was on
the ground, standing upright with his hands in front of his face, backing up toward Tennessee
Avenue, or bent over shaking dirt and grass from his hair. However, five witnesses testified that
Calhoun shot Taplin in the head at close range.
      The police arrived quickly, and Taplin was rushed to the hospital where he died from the
gunshot wound. Early on September 30, Detective Fuller of the Waco Police Department obtained
a warrant for Calhoun’s arrest. Calhoun, who was placed on “Waco’s Ten Most Wanted” list,
was eventually arrested in June 2001 in Dallas. At the time of his arrest, he gave the police a fake
identification card, two unknown addresses, and a false name, Yotanka Calhoun.
IMPROPER JURY ARGUMENT
      The single issue that Calhoun raises on appeal is whether the trial court erred when it
overruled an objection to the State’s jury argument and whether that error was harmful. A proper
jury argument must fall within one of four general areas: (1) summation of the evidence; (2)
reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea
for law enforcement. Guidry v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). When a
prosecutor’s statement falls outside of these parameters, the statements themselves cannot be error. 
Rather, it is the trial court’s responses to defense counsel’s objections to the statements that may
be error. Chimney v. State, 6 S.W.3d 681, 703 (Tex. App.—Waco 1999, no pet.). Usually three
types of error are possible: (1) overruling the initial objection to the prosecutor’s statement; (2)
granting the initial objection, but denying a request for an instruction to the jury to disregard the
statement; and (3) granting the initial objection and instructing the jury to disregard, but denying
a motion for a mistrial. Id.
      Here, Calhoun alleges the first type of error. He takes issue with the State’s comments during
its concluding address to the jury:
      STATE:      She [Tiffanie Duffy] said he [Taplin] was backing up into the street. And then
she pointed where she was standing by that window of that apartment looking
back as she was walking, and she saw the gun go off. It wasn’t a sniper
someplace else. It was that gun held by that man. If you believe that he was in
Waco and he was there, he’s the shooter. If you don’t believe –-
 
      DEFENSE COUNSEL:   Your Honor, I am going to object to that. That is a misstatement
of the law, and it is also a misstatement of fact. She is saying if
he was in Waco, he was the shooter. That is obviously not their
burden. Their burden is to establish whether or not he was in fact
the shooter. She is saying if he was in Waco is adequate, and I am
going to object to that.
 
      COURT:     Overrule the objection. I will instruct the jury that they will recall the Court’s
instructions as handed to [] them. The State must prove beyond a reasonable
doubt that the defendant is guilty.
 
      STATE:      I apologize if I misstated that. If we have proven to you that he was the person
that was involved in this fight, that he was the one holding the gun, that he
wasn’t in Dallas, then he’s the shooter.
 
      DEFENSE COUNSEL:   Again, Your Honor, I am going to object to that. If he was there
holding a gun does not make the shooter. And she’s trying to say
if that is the case, then they have to convict. That’s wrong. The
jury is charged with deciding whether or not he in fact was the
person who pulled the trigger that fired the gun that struck the
deceased with the bullet. I am going to object to it.
 
      COURT:     Overruled.

      “Counsel is allowed wide latitude without limitation in drawing inferences from the evidence,
so long as such inferences are reasonable, fair, legitimate, and offered in good faith.” Gaddis v.
State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). Therefore, we must examine any
challenged jury argument in the context in which it was offered. Id.
      Here, the State’s comments were responsive to an argument made by Calhoun’s attorney. 
Calhoun’s defense was an alibi: he could not have shot Taplin because he was working at “Putt-Putt Golf and Games” in Mesquite, Texas, on September 29, and he was not in Waco that day.


 
He also postulated that another man, who remained near the apartment building during the fight,
was the shooter. This was based on the testimony of Trolecia Tyler and Tiffanie Duffy. Trolecia
Tyler testified that Robinson had a gun, and Tiffanie Duffy testified that a third man, whom she
did not know, had a gun and stood outside near an apartment window during the fight. Also,
Calhoun’s attorney pointed to the inconsistencies in the details provided by the State’s witnesses. 
He systematically summarized and analyzed the testimony of each witness, as was his right to do. 
Guidry v. State, 9 S.W.3d at 154.
      The State addressed the arguments made by Calhoun’s attorney. In particular, the prosecutor
evaluated Tiffanie Duffy’s testimony, noting that she testified to watching Calhoun shoot Taplin
as she backed away from the scene. We find that, in this context, the prosecutor’s statements were
reasonable inferences contradicting Calhoun’s theory that a sniper by the window, not Calhoun,
shot Taplin.
CONCLUSION
      We overrule Calhoun’s sole issue and affirm the judgment.


                                                                   BILL VANCE
                                                                   Justice
Before Chief Justice Davis,
      Justice Vance, and 
      Justice Gray
Affirmed
Opinion delivered and filed October 9, 2002
Do not publish
[CRPM]