Affirmed and Memorandum Opinion filed June 1, 2006









 Affirmed and Memorandum Opinion filed June 1, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00377-CR

____________

 

ANDREW JAMES
DONAHOE,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 174th
District Court

Harris County, Texas

Trial Court Cause No. 979,628

 



 

M E M O R A N D U M  O P I N I O N

Challenging his conviction for murder,
appellant Andrew James Donahoe asserts the evidence is factually insufficient
to support his conviction and that the trial court reversibly erred in various
evidentiary rulings.  We affirm. 

I.  Factual and Procedural Background








On January 31, 2004, around 4:00 a.m., Joanna
Garcia drove to the Denver Harbor home of Manuela AManny@ Longoria.  Manny shared the home with her husband, Eddie
Garcia.  On her way there, Joanna saw
appellant, known as APork Chop@, and two of his
companions,  Dennis (known as ABlack@), and Mike
Vasquez.  The three were at Dennis=s house, located
around the corner from Manny=s house.  Joanna also saw her estranged common-law
husband and the complainant, Jesus Aguilar, walking alone near Manny=s house.   Joanna wanted to avoid Jesus so she drove
around for a short time until he had left the area.  Joanna then returned to Manny=s house, parked
her truck, and went inside. 

Vasquez testified that appellant left
Dennis=s house for a
short time, and returned very irate, saying that Jesus had punched him in the
face when he walked over to Manny=s house.  Vasquez testified that appellant left Dennis=s home about ten
minutes later and went in the direction of Manny=s house.  Shortly thereafter, Dennis told Vasquez to
leave because he was scared that appellant might cause trouble. 

Joanna testified that Jesus arrived at
Manny=s house about
thirty minutes after she did.  Joanna
told Manny not to open the door.  When
Jesus continued to pound on the door for several minutes, Inez, Manny=s friend, opened
the door and told Jesus that Joanna did not want to speak to him.  Jesus lingered for a short period and then
walked away from the house.  Vasquez
testified that as he headed home, he saw appellant, who was standing at the
intersection of Boyles and San Angelo, look toward a parked truck and say, Abitch, you want to
steel me?@ 
Vasquez saw appellant reach into his pocket, grab a gun, and shoot at
the parked truck a few times. Then Vasquez realized that appellant had been
shooting at Jesus, who was standing on the right side of the truck. It appeared
to Vasquez that the gun had jammed, and he heard Jesus plead with
appellant,  APork don=t kill me.@  Appellant moved closer to Jesus and fired the
gun again.  Petrified, Vasquez took off
running down another street toward his home. 









Meanwhile, Joanna, hearing the gunshots,
told Manny to call the police. Laura Guajardo, who lived nearby, testified that
the gunshots awakened her.  When
Guajardo  looked outside her window
around 5:00 a.m.  she saw  Jesus, who was behind a truck across the
street, run across the street, stumble, and fall into a ditch.  Guajardo testified that Jesus appeared to be
holding his leg.  Jesus knocked on the
door to an apartment in front of Guajardo=s, but received no
answer.  Guajardo watched as appellant
followed Jesus down the street.  She then
heard more gunshots, and a few minutes later appellant returned and looked around
as if to make sure no one had seen him. 

Lidia Garcia, Joanna=s mother, who also
lived nearby, testified that she woke up early on the morning of the
shooting.  She heard distant
gunshots.  Lidia testified that she fell
asleep, and then woke up to more gunshots that appeared to be closer to her
home.  Lidia opened the door to her house
and saw Jesus at the corner pleading, AHelp me, please;
help me, please.@  Lidia
went outside and asked Jesus what happened. 
Jesus responded that APork Chop@ shot him.  Jesus tried to turn around but fell on his
face.  Lidia called 911. 

Officer Ron Plotter of the Houston Police
Department was dispatched to the scene 
at 5:14 a.m.  Officer Plotter
testified that he found Jesus on the ground. 
Jesus, suffering from eight gunshot wounds, appeared to be in critical
condition but he managed to say that APork Chop@ had shot him at
two separate times and locations. Jesus was transported to Ben Taub General
Hospital and died shortly after arrival. 

Officer Glen West of the Homicide Division
of the Houston Police Department conducted an investigation of the crime scene,
which extended over approximately three blocks. 
Officer West found twelve fired cartridge cases at three separate
locations, along with fired bullets, blood, and clothing.  The evidence recovered at the scene and from
Jesus=s body were
consistent with at least two firearms being discharged, including a .40 caliber
and a nine millimeter.  

Fabian Medrano testified that he had met
appellant, whom he knew by the name APork,@ while in
jail.  When the two met, appellant was in
custody for an unrelated case.  Medrano
testified that appellant had bragged to him about shooting a man in Denver
Harbor.  In his discussions with Medrano,
appellant claimed to have used two guns in the Denver Harbor shootingBa Glock .40 and a
nine millimeter.  Appellant explained to
Medrano that he had to use two firearms because the first gun ran out of
bullets.  








On March 2, 2004, the officers located
appellant and he gave a statement in which he admitted being involved in an
altercation with Jesus on the date of the murder.  Appellant stated that Jesus punched him in
the jaw.  Appellant claimed to have gone
back to Dennis=s house. 
Appellant, however, did not admit to shooting Jesus.  

Appellant was arrested and charged with
the murder of Jesus.  A jury found him
guilty as charged and assessed punishment at a fine of $10,000 and seventy-five
years= confinement in
the Texas Department of Criminal Justice, Institutional Division. 

II. 
Issues Presented  

Appellant brings five issues on appeal: 

(1)     The
evidence is factually insufficient to support his conviction of murder. 

(2)     The
trial court erred in overruling his objection to Houston Police Officer Glen
West=s testimony regarding the caliber
of the bullets found at the murder scene.

(3)     The
trial court erred by refusing appellant=s request to introduce any impeachment evidence of the
victim, despite the prosecution=s use of the victim=s dying declaration.

(4)     The
trial court erred by refusing appellant=s request to cross-examine Joanna Garcia (the victim=s estranged common-law wife) about
their violent relationship. 

(5)     The
trial court erred by refusing appellant=s request to question Joanna Garcia about her alleged
affiliation with gang members. 

 

A.      Is the evidence factually sufficient to
support appellant=s conviction for murder?

 








Appellant contends
that the evidence is factually insufficient to support his conviction for
murder. A factual-sufficiency review begins with the presumption that the
evidence supporting the jury=s verdict is
legally sufficient.  Clewis v. State,
922 S.W.2d 126, 134 (Tex. Crim. App. 1996).  
When evaluating a challenge to the factual sufficiency of the evidence,
we view all the evidence in a neutral light and inquire whether the jury was
rationally justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  A reviewing
court may find the evidence factually insufficient in two ways.  Id. 
First, when considered by itself, the evidence supporting the verdict
may be too weak to support the finding of guilt beyond a reasonable doubt.  Id. 
Second, after weighing the evidence supporting the verdict and the
evidence contrary to the verdict, the contrary evidence may be strong enough
that the beyond-a- reasonable-doubt standard could not have been met.  Id. 
at 484B85. 
In conducting the factual-sufficiency review, we must employ appropriate
deference so that we do not substitute our judgment for that of the fact
finder.  Id. at 481B82.  Our evaluation should not intrude upon the
fact finder=s role as the sole judge of the weight and
credibility given to any witness=s testimony.  Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997).  In conducting a
factual-sufficiency review, we must discuss the evidence appellant claims is
most important in allegedly undermining the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).   A person
commits the offense of murder if he intentionally or knowingly causes the death
of an individual. Tex. Pen. Code Ann.
' 19.02(b) (Vernon
Supp.  2005). 

Appellant contends
that the verdict is against the overwhelming weight of the evidence and in
support of this argument asserts that the witnesses who testified at trial
presented contradictory stories.  The
existence of contradictory evidence does not defeat factual sufficiency.  The jury, being the sole judge of the facts
and credibility of the witnesses, could choose to believe or not believe any of
the State=s witnesses, or any portion of their
testimony. Esquivel v. State, 506 S.W.2d 613, 615 (Tex. Crim. App.  1974).  
Further, a witness may be believed even though some of his testimony may
be contradicted and part of his testimony accepted and the rest rejected. See
Jackson v. State, 505 S.W.2d 916, 918 (Tex. Crim. App. 1974).   We may not substitute our judgment for that
of the jury.   King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App.  2000).








The evidence of
appellant=s guilt is overwhelming.  Although appellant testified at trial that he
did not shoot Jesus, the jury was well within its discretion to disbelieve
appellant=s self-serving statements.  See Bustamonte v. State, 106 S.W.3d
738, 741 (Tex. Crim. App. 2003).   For
simplicity, we do not reassert all of the testimony presented  in the factual background of this opinion,
but rather focus primarily on the fact that there was an eyewitness to this
crime.  Mike Vasquez testified that
appellant left Dennis=s house for a short period of time, and
returned very irate, and then left again about ten minutes later, heading in
the direction of Manny=s house.  
Shortly thereafter, Dennis told Vasquez to leave because he was scared
that appellant might bring trouble.  As
he headed home, Vasquez saw appellant look toward a parked truck, pull a gun
from his pocket, and shoot at the parked truck a few times.  Vasquez then realized appellant was shooting
at Jesus, and he heard Jesus say to appellant, who was known as APork Chop,@ APork, don=t kill me.@   Vasquez saw appellant move closer to Jesus
and fire the gun again.[1]   The testimony from a single eyewitness may
be sufficient to support a conviction.   See
Bowden v. State, 628 S.W.2d 782, 784‑85 (Tex. Crim.  App. 1982). 
The evidence is factually sufficient to support appellant=s conviction for
murder.  Accordingly, we overrule
appellant=s fifth issue.         

B.      Did the trial court err in overruling
appellant=s objection to the police officer=s testimony regarding the caliber
of the bullets found at the murder scene?

 








In his first
issue, appellant contends that the trial court abused its discretion in
allowing Officer Glen West=s testimony as to
the  Acaliber of the
bullets found at the murder scene.@   More specifically, appellant asserts  that the admission of Officer West=s testimony that
the fired bullets, State=s Exhibits 71 and 72, Awould be a larger
caliber, as a 45 or 40 type caliber weapon@ was inadmissible
as expert testimony.  The State contends
that appellant waived this complaint because his argument on appeal does not
comport with his objection at trial.  

At trial,
appellant asserted the following objection: 


 Q: Are you a firearm=s examiner? 

A: No, sir, I am not. 

Q: Is there any way for you to tell
in your expertise what caliber these were? 

A: It would only be a guess, sir.

Q: What would that guess be based
on?

A: It would be a largerB

Appellant=s counsel: Your Honor, I object
to the guessing. 

The Court: That
will be overruled. 

 (emphasis added).  Because appellant did not object at trial that
Officer West=s testimony was inadmissible as an expert
opinion under Texas Rule of Evidence 702, appellant failed to preserve his
complaint for appellate review.   See
Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (stating that
to preserve error for appellate review, complaint on appeal must comport with
objection at trial, and an objection stating one legal theory may not be used
to support a different legal theory on appeal); see also Tex. R. App. P. 33.1(a) (stating that
to preserve complaint for appellate review, a party, among other things, must
present an objection stating the specific grounds for the ruling desired).   Accordingly, we overrule appellant=s first issue.

C.      Did
the trial court err by refusing appellant=s request to
introduce any impeachment evidence of the victim, despite the prosecution=s use of the
victim=s dying declaration?

In his second issue, appellant contends
that the trial court erred in refusing appellant=s request to
introduce impeachment evidence of the victim. 
At trial, appellant asked Sergeant Paul Motard: 








ADid Mike Vasquez relate to you that
him [sic] and [the complainant] had been in jail many times.@ 


Appellant contends that the trial court
erred in sustaining the State=s objection to
this question because in doing so, the trial court violated his Sixth Amendment
right to confrontation through cross-examination.    Appellant, however, did not make this
objection at trial nor did appellant make an offer of proof or establish what
the excluded testimony would have shown.

To preserve error,
there must be a timely, specific objection. 
See Tex. R. App. P.  33.1.  
Even constitutional error may be waived by failure to object at trial. Briggs
v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).   A defendant waives his constitutional right
to confront witnesses if he does not object at trial.  Holland v. State, 802 S.W.2d 696, 700
(Tex. Crim. App. 1991); Thacker v. State, 999 S.W.2d 56, 61 (Tex. App.BHouston [14th
Dist.] 1999, pet. ref=d); Saldivar v. State, 980 S.W.2d
475, 496 (Tex. App.BHouston [14th Dist.] 1998, pet. ref=d).  When evidence is excluded, the right to make
an offer of proof or perfect a bill of exceptions is absolute.   Guidry v. State, 9 S.W.3d 133, 153
(Tex. Crim. App.  1999).   The record is devoid of any objection or
reference to what, if anything, Officer Motard would have said in response to
this question had any such objection been overruled.   In the absence of such information, any
claim of error is not preserved for appellate review.  Warner v. State, 969 S.W.2d 1, 2 (Tex.
Crim. App.  1998). Accordingly, we
overrule appellant=s second issue. 

D.      Did the trial court err by refusing
appellant=s request to cross-examine the
victim=s estranged common-law wife about
their violent relationship? 

 

In his third
issue, appellant contends that the trial court erred in refusing to admit
evidence of the violent relationship between the victim and his estranged
common-law wife, Joanna Garcia. 
Appellant complains that the trial court erred in sustaining the State=s objections to
the following questions: 








AHad you everByou testified earlier that Jesus
became violent. Had he ever become violent with you?@ 

AHad you ever had to call the police
on Jesus Aguilar?@  


The trial court sustained State=s objections as to
relevance.   Appellant contends that in
doing so, the trial court denied his Sixth Amendment right to cross-examine a
witness for bias and motive.  Appellant, however,
did not make these objections at the proper time nor did he make these
objections when he later made his bill of exception on this excluded testimony.[2]  A defendant waives his constitutional right
to confront witnesses if he does not make a timely, specific objection at
trial.  See Holland, 802 S.W.2d at
700; Thacker, 999 S.W.2d at 61.  Because appellant did not do so, he failed to
preserve this issue for appellate review. 








In any event, even
if appellant had preserved error on this issue, and presuming the trial court
erred in sustaining the State=s objections, any
error would be harmless.  See Delaware
v. Van Arsdall, 475 U.S. 673, 678, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674
(1986) (setting forth five factors to employ in a harmless error analysis when
a violation of a Confrontation Clause occurs); Shelby v. State, 819
S.W.2d 544, 546 (Tex. Crim. App. 1991) (accepting the Van Arsdall factors
for the appropriate means of evaluating harm); Gutierrez v. State, 150
S.W.3d 827, 831 (Tex. App.BHouston [14 Dist.]
2004, no pet.) (explaining application of the Van Arsdall factors).  In Shelby, the Court of Criminal
Appeals adopted a three‑prong test for reviewing courts to apply when
assessing harm in Confrontation Clause cases. 
819 S.W.2d at 546‑47.  
First, we assume that the damaging potential of the cross‑examination
is fully realized. Id.  Second,
with that assumption in mind, we review the error in light of the following
factors: (1) the importance of the witness=s testimony in the
prosecution=s case; (2) whether the testimony was
cumulative; (3) the presence or absence of evidence corroborating or
contradicting the testimony of the witness on material points; (4) the extent
of cross‑examination otherwise permitted; and (5) the overall strength of
the prosecution=s case. 
Id.  Finally, we must
determine if the error was harmless beyond a reasonable doubt. Id.

In applying the
first segment this three-part test, we assume that appellant would have been
permitted to fully cross-examine Joanna and the damaging potential of the
cross-examination would have been fully realized.  Next, with this assumption in mind, we weigh
the five factors.  First, despite
appellant=s contention, Joanna was not an important
witness to the prosecution=s case.  There were several other witnesses at trial
who testified as to the crime, including an eyewitness who saw appellant
shoot  Jesus.  Second, the matter made the subject of
appellant=s bill of reviewCi.e., that Joanna
and Jesus had a violent relationshipCwas not new
testimony.  Not only did Manny Longoria
testify to the nature of this relationship, Joanna herself testified, during
direct examination,  that she and Jesus
had been through some difficult times, and, at points, Jesus had become
extremely jealous and violent.  Third,
Joanna=s own testimony
established that her relationship with Jesus was difficult and somewhat
violent.   Fourth, appellant was
permitted to fully cross-examine Joanna on all other points.  Fifth, the State=s case against
appellant was strong even without the excluded testimony.  The evidence was ample to establish appellant=s guilt.  Thus, it would not be difficult to conclude
that any error would be harmless beyond a reasonable doubt.   See Shelby, 819 S.W.2d at 546‑47;
see also Simpson v. State, 119 S.W.3d 262, 269‑71(Tex. Crim. App.
2003) (finding confrontation clause violation to be harmless error where
evidence of guilt was strong and erroneously admitted statement was
corroborated by other evidence adduced at trial).  Accordingly, we overrule appellant=s third issue.

E.      Did the trial court err by refusing
appellant=s request to question the victim=s estranged common-law wife about
her alleged affiliation with gang members?

 








In his fourth
issue, appellant contends that the trial court erred in refusing his request to
question Joanna Garcia about her alleged affiliation with gang members.  Appellant again contends that he was denied
his Sixth Amendment right to confrontation through cross-examination.    Appellant, however, did not make this
objection at trial nor did he make an offer of proof or establish what the
excluded testimony would have shown. 
Therefore, appellant has not preserved his complaint for appellate
review.   See Warner, 969 S.W.2d at 2; Holland,
802 S.W.2d at 700.  We overrule appellant=s fourth issue. 

Having overruled
all of appellant=s issues, we affirm the trial court=s judgment. 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered and Memorandum Opinion filed June 1,
2006.

Panel consists of Justices Anderson, Edelman, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).

 











[1]  Appellant
contends that Vasquez=s testimony was inconsistent because while Vasquez
testified that he witnessed the shooting, he put the time at 2:00 a.m. or 3:00
a.m., rather than later that morning. 
Again, the
jury, being the sole judge of the facts and credibility of the witnesses, could
choose to believe or not believe any or all of Vasquez=s testimony.  See Esquivel, 506 S.W.2d at 615.  In addition, there is sufficient testimony to
show that appellant was shot twice, at separate times and locations. 





[2]  Appellant made
a proper bill of exception and stated that if he would have been able to
expound on this topic, he would have shown that the relationship between Joanna
and Jesus was troubled, violent, and resulted in several police calls.