Opinion issued March 1, 2007




















In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00214-CR

NO. 01-06-00215-CR

NO. 01-06-00216-CR

____________


RONALD J. HAMILTON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 185th District Court

Harris County, Texas

Trial Court Cause Nos. 1033104, 1033105, & 1033106






MEMORANDUM OPINION

 After appellant, Ronald J. Hamilton, tried jointly with co-defendant, Shedrick
Jermane White, pleaded guilty to the offenses of unlawful possession of a firearm by
a felon (1) and aggravated robbery, (2) a jury found him guilty of the offense of aggravated
assault on a public servant. (3) Appellant pleaded true to the allegation in an
enhancement paragraph that he had a previous felony conviction, and the jury
assessed his punishment at confinement for 60 years in the aggravated robbery case,
20 years in the unlawful possession of a firearm by a felon case, and 55 years in the
aggravated assault on a public servant case. In four points of error, appellant
contends that the evidence is legally and factually insufficient to support his
conviction for aggravated assault on a public servant and that, in regard to all three
cases, the trial court erred in admitting evidence that the complainant in the
aggravated robbery case came to the United States "for a better life" and in excluding
evidence "regarding the prison system" during the punishment phase of the trial. 

 We affirm.


Factual Background

 Sergio Palomo testified that on the night of July 6, 2005, he hosted a party at
his automobile mechanic and body shop, which also served as his family's residence. 
At midnight, the only people remaining at the party were Palomo, his stepson, Juan
Sosa, one of Palomo's friends, Carmelo Hernandez, and Palomo's wife, Leonora
Palomo, who was inside the residence. While outside talking on his cellular phone,
Palomo felt a man grab him from the back and put a gun to his head. The man,
wearing a mask, pushed Palomo to the ground, reached into Palomo's pockets, and
removed his belongings. Another man, also wearing a mask, pointed a gun at Sosa
and Hernandez. Palomo explained that he could not state the type of gun that was
used against him, but that the other man pointed a "revolver" at Sosa and Hernandez. 
Palomo then saw the man who pointed the gun at his head, who was the shorter of the
two suspects and the more dominant of the two, enter his home.

 Leonora Palomo ("Leonora"), with the assistance of a Spanish translator,
testified that she looked outside, saw two men, each with a gun, and called for
emergency assistance. Once police officers arrived, Leonora went outside and then
led the officers into the home. Leonora stopped when she saw appellant, with his face
exposed and a gun in his hand, in her bedroom. After appellant pointed a gun at her,
she ran into another room and told the officers that he was in her bedroom. "About
two seconds" after she saw appellant in her bedroom, Leonora heard gunshots coming
from inside the house.

 Carmelo Hernandez, with the assistance of a Spanish translator, testified that
as White held a gun on him and Sosa, appellant held a gun to the back of Palomo's
head. Hernandez explained that both assailants had a gun, "one automatic" and the
other "a pistol or a revolver." While White remained with Hernandez, Palomo, and
Sosa outside, appellant went into the house. Before the police officers arrived, White
took Hernandez, Palomo, and Sosa inside the house. When Palomo got up to go look
for his wife, Hernandez and Sosa remained in a room inside the house, and they heard
several shots fired. 

 Juan Sosa testified that the shorter suspect, who he later identified as appellant,
had a "silver gun." Appellant went inside the home to look for narcotics and then
came out and told White to bring Sosa, Palomo, and Hernandez inside the home. 

 Houston Police Department ("HPD") Officer M.T. Ferguson, the complainant,
testified that on July 6, 2005, he was dispatched to the Palomos' home, responding
to "a home invasion in progress." Ferguson explained that he was dressed in his
police officer's uniform and he arrived at the scene in a marked patrol car. After he
followed Leonora inside the home, "[a] black male with a silver revolver jumped out
of the middle hallway door and point[ed] it at [Ferguson]." Ferguson stated that he
was sure that the weapon was a "revolver" and he "saw one shot discharge from this
weapon and [he] heard two pops." After the man fired his gun, he ran down the
hallway, opposite from Ferguson. Ferguson explained that the lighting in the hallway
was sufficient for the shooter to see that Ferguson was a uniformed police officer. 
Although Ferguson was not able to identify the shooter in the hallway, he thought that
it "was a large person" that had pointed the gun at him. He was also sure that the man
who fired at him used a "revolver," not a semiautomatic handgun. Although
Ferguson heard two gunshots while in the hallway, he was not struck. 

 HPD Officer K.L. Raven testified that once inside the hallway, a man pointed
a "silver or chrome" gun at Officers Raven, Ferguson, and Wilkes. He retreated to
"get cover" and, as he turned around, heard a gunshot. Raven could not identify
whether the gun was a semiautomatic or a revolver.

 HPD Officer J. Scales testified that as Officers Raven, Ferguson, and Wilkes
entered the home through the front, he and HPD Officer Adams heard a gunshot come
from inside as they walked toward the rear of the home. Scales thought that one of
the officers or a suspect had been shot. Scales and Adams then saw two men exit the
back of the house, and Adams yelled at them to "drop the gun." When both men
pointed their weapons at Scales and Adams, the two officers then began firing at the
suspects. Scales explained that when appellant "got up and tried to reach for [a]
weapon," Scales opened fire again. Scales noted that appellant was "more or less
closer to the garage," and White was closer to a car. Although White complied with
the officers' verbal commands, appellant moved toward his weapon. After appellant
was shot again, he finally complied with the officers' instructions. HPD Officer E.L.
Wilkes testified that, at that point, he kicked a semiautomatic weapon away from
appellant, and he did not feel there was a threat from the other man with the revolver.

 Officer R. Gutierrez, assigned to the HPD Crime Scene Unit, testified that once
he arrived at the scene, the other officers told him that a shot had been fired inside the
home. Accordingly, he went inside the home to look for bullet strikes and possible
fired cartridge casings. Officer Ferguson told Gutierrez that the weapon he had seen
was a revolver. In describing the differences between a revolver and semiautomatic
handgun, Gutierrez explained that a revolver has a chamber that you "have to open
up, place the bullets in, close it, fire,""[t]he fired cartridge casing remains within the
cylinder," and the casing is not ejected. He explained that in regard to a
semiautomatic, "you have a magazine which holds the ammunition, comes out, you
place it in, you have to take the slide, pull it back, it chambers a round into the
weapon as it's fired." "The fired cartridge casing is then ejected from the port" and
"does not remain within the weapon." Gutierrez was surprised when he found a
"fired cartridge casing" in the hallway area because he had been told by Officer
Ferguson that the suspect had a revolver. Based upon his investigation of the crime
scene, including the facts "that the revolver was empty" and "not loaded," Gutierrez
concluded that a bullet strike inside the house came from a semiautomatic weapon,
not a revolver as stated by Officer Ferguson. 

 HPD Firearms Examiner K. Downs, in explaining the difference between a
fired shell casing and a fired bullet, testified that "[a] cartridge is the entire
component. It consists of the bullet, the cartridge case, the primer and the powder. 
That's the entire component. It sits inside the firearm." "[T]he cartridge case, in the
case of a semiautomatic weapon, is extracted and ejected clear of the firearm." 
Downs further testified that she "looked at fired cartridge cases," "five separate
firearms," and "several bullets." She found "a fired S&W cartridge case" in the
semiautomatic pistol. Downs explained that a fired cartridge casing was recovered
from within the weapon, meaning that the weapon would not be capable of being
fired, and in order to correct the malfunction, one would need to "clear the slide,"
thus ejecting the cartridge casing. Additionally, at least three fired cartridge casings
matching the semiautomatic weapon were recovered. Downs found no physical
evidence indicating that a revolver had been fired at the scene. 

Legal and Factual Sufficiency

 In his first two points of error, appellant argues that the evidence is legally and
factually insufficient to support his conviction for the offense of aggravated assault
on a public servant because it is "apparent" that White, who possessed the revolver,
shot at Officer Ferguson. He argues that because "Officer Ferguson testified that he
saw a 'big silver revolver' in his face and that he 'saw a shot fired from the
revolver,'" appellant cannot be the one who shot at Ferguson. He also asserts that his
conviction cannot stand under the law of parties. See Tex. Pen. Code Ann. §
7.02(a), (b) (Vernon 2003).

 Appellant also argues that the evidence is legally and factually insufficient "to
show that the shooter of Officer Ferguson knew that [he] was a public servant or a
police officer" because "it was dark and late at night and the trailer home's hallway
was narrow enough to cause the officers to use their flashlights." He also asserts that
the officers "were unable to announce that they were police."

Standard of Review

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We note that
the trier of fact is the sole judge of the weight and credibility of the evidence. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when
performing a legal sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the fact finder. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any
inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). In
performing a factual sufficiency review, we are to give deference to the fact finder's
determinations, including determinations involving the credibility and demeanor of
witnesses. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). We may not
substitute our judgment for the fact finder's. Watson, 204 S.W.3d at 414-15.

 We note that when reviewing challenges to the sufficiency of the evidence, the
standard of review is the same for both direct and circumstantial evidence cases. See
Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).


Aggravated Assault on a Public Servant

 A person commits the offense of aggravated assault on a public servant if the
person intentionally or knowingly threatens another with imminent bodily injury and
the person uses or exhibits a deadly weapon during the commission of the offense,
and the offense is committed against a person the actor knows is a public servant
while the public servant is lawfully discharging an official duty. See Tex. Pen. Code
Ann. §§ 22.01(a)(2), 22.02(a)(2), 22.02(b)(2)(B) (Vernon Supp. 2006).

 Here, viewing all the evidence in the light most favorable to the jury's verdict,
Sergio Palomo and the other robbery victims testified that appellant entered Palomo's
home, possessing a firearm. Leonora testified that she saw appellant in a bedroom
with a gun and when he pointed the gun at her, she ran away. Approximately two
seconds later, she heard gunshots coming from inside the home. Contemporaneously,
according to Officer Ferguson, a man jumped out of the hallway and fired a shot in
his direction. Also, Crime Scene Unit Officer Gutierrez and Firearms Examiner
Downs testified that the physical evidence recovered from inside the home indicated
that a semiautomatic weapon was used against Ferguson, not a revolver. Moreover,
the evidence shows that during the robbery appellant possessed a semiautomatic
weapon and White possessed a revolver. (4) Viewing all the evidence in the light most
favorable to the jury's verdict, we conclude that a rational trier of fact could have
found, beyond a reasonable doubt, that appellant intentionally or knowingly
threatened Officer Ferguson with imminent bodily injury while exhibiting a deadly
weapon.

 In conducting our factual sufficiency review, we note that Officer Ferguson
testified that he was sure that the weapon discharged in his direction was a revolver,
not a semiautomatic handgun. However, Crime Scene Unit Officer Gutierrez and
Firearms Examiner Downs both testified that the physical evidence recovered from
inside the home indicated that a semiautomatic weapon was fired against Ferguson,
not a revolver. Again, we note that we may not substitute our judgment for that of the
fact finder, including their determinations involving the credibility of witnesses. See
Cain, 958 S.W.2d at 407. Thus, viewing the evidence neutrally, we conclude that it
is not so obviously weak such that the verdict seems clearly wrong and manifestly
unjust or that the proof of guilt is against the great weight and preponderance of the
evidence.

 In regard to appellant's argument that the evidence is legally and factually
insufficient "to show that the shooter of Officer Ferguson knew that [he] was a public
servant or a police officer," we note that an "actor is presumed to have known the
person assaulted was a public servant or a security officer if the person was wearing
a distinctive uniform or badge indicating the person's employment as a public servant
or status as a security officer." Tex. Pen. Code Ann. § 22.02(c) (Vernon Supp.
2006). Here, the officers testified that they arrived at the scene in their marked patrol
cars and wearing their HPD uniforms. Officer Ferguson specifically testified that the
lighting in the hallway was sufficient for the shooter to see him, and he believed that
the shooter could tell that he was a police officer.

 Viewing all the evidence in the light most favorable to the jury's verdict, we
conclude that a rational trier of fact could have found that appellant knew that Officer
Ferguson was a police officer when he fired his gun at him. Furthermore, viewing the
evidence neutrally, including the fact that it was dark inside the home and that the
police officers did not announce their presence, we conclude that the evidence is not
so weak that the verdict is clearly wrong or manifestly unjust or that the proof of guilt
is against the great weight and preponderance of the evidence. Accordingly, we hold
that the evidence is legally and factually sufficient to support appellant's conviction
for the offense of aggravated assault on a public servant. Having held that the
evidence is legally and factually sufficient to support appellant's conviction as the
principal, we need not consider whether the evidence is legally and factually
sufficient to support his conviction under the law of parties.

 We overrule appellant's first and second points of error.

Erroneously Admitted Evidence

 In his third point of error, appellant argues that "it was error for the trial court
to allow testimony over defense objection that the reason [Sergio Palomo] came to
the United States was to better his life" because the evidence "had no logical
relevance or significance."

 As a prerequisite to presenting a complaint for appellate review, the record
must show that a timely objection was made to the trial court. Tex. R. App. P.
33.1(a); see also Lagrone v. State, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997) ("A
defendant must make a timely objection in order to preserve error in the admission
of evidence."). An objection should be made as soon as the ground for objection
becomes apparent. Lagrone, 942 S.W.2d at 618. If a defendant fails to object until
after an objectionable question has been asked and answered, and he can show no
legitimate reason to justify the delay, his objection is untimely and error is waived. 
Id.

 During Palomo's testimony, on direct examination, the following exchange
occurred,

[State]: Okay. Why did you come to the United States?


[Palomo]: For a better life.

[State]: Okay. Did you have a family here?

[Palomo]: Yes.

[State]: All right. Who was here from your family?


[Palomo]: My wife, my son and my sister.

[State]: Okay. And have you tried to make a better life here
in the United States?


[Palomo]: Yes ma'am.

[State]: And have you been able to do so?

[Palomo]: Yes.

[Appellant]: Objection, Your Honor. Relevance.

[Trial Court]: Overruled.

(emphasis added). 

 Here, appellant did not object until after several other questions had been asked
and answered. Accordingly, we hold that appellant has waived any error regarding
Palomo's testimony that he came to the United States "[f]or a better life."

 We overrule appellant's third point of error.


Erroneously Excluded Evidence

 In his fourth point of error, appellant argues that "it was error for the trial court
not to allow the jury to hear testimony regarding the prison system during the
punishment hearing" because his "experience in prison, both good and bad, should
have been presented to the fact-finders in order [to] help them to properly assess the
appropriate sentence" and "[t]he jury is entitled to hear such testimony since they had
to make the determination of [a]ppellant's punishment."

 During the punishment hearing, while appellant was testifying, the following
exchange occurred,

[Appellant's Counsel]: Now, when you were in prison for those
years, what effect, if any, did it have on you? 
Did it make you better? Did it give you some
life skills with which to work with and give
you some occupational skills? What did it do
for you?


[Appellant]: I did earn my CDL license in TDC. I worked
with youth, youths, six and a half years of my
incarceration, through a program called
Operation Outreach. I learned survival. And
then I learned how to survive the system as -
as far as being able to make it out alive. And
there was other things that's not good. 
There's other things that I saw that are not
good.


[Appellant's Counsel]: Like what, sir?


[State]: Objection, Your Honor. What things in
prison that he saw that weren't good, I object.


[Trial Court]: Sustained.(emphasis added).

 Error in the exclusion of evidence may not by urged unless the proponent
perfected an offer of proof or a bill of exceptions. Guidry v. State, 9 S.W.3d 133, 153
(Tex. Crim. App. 1999). The record in this case does not indicate what the excluded
testimony would have been. Absent a showing of what the testimony would have
been, or an offer of a statement concerning what the excluded evidence would show,
nothing is presented for review. Id. Accordingly, we hold that appellant has waived
any error regarding the exclusion of his testimony "regarding the prison system."

 We overrule appellant's fourth point of error.Conclusion

 We affirm the judgments of the trial court.



 Terry Jennings

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Pen. Code Ann. § 46.04(a) (Vernon Supp. 2006). Appellate Cause Number
01-06-00215-CR; Trial Court Cause Number 1033105. 
2. See id. § 29.03(a) (Vernon 2003). Appellate Cause Number 01-06-00216-CR; Trial
Court Cause Number 1033106. 
3. See id. §§ 22.01(a)(2), 22.02(a)(2), 22.02(b)(2)(B) (Vernon Supp. 2006). Appellate
Cause Number 01-06-00214-CR; Trial Court Cause Number 1033104. 
4. We also note that, on appeal, both appellant and the State assert that appellant
possessed the semiautomatic weapon and White possessed the revolver.