NO. 07-11-00456-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 20, 2013

_____

THOMAS WOOTEN, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 62,737-E; HONORABLE DOUGLAS WOODBURN, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Thomas Wooten, appeals his conviction for aggravated sexual assault of a child[1] and the resulting life sentence imposed as his punishment. On appeal, he contends that the trial court abused its discretion by excluding testimony regarding a text message that the complainant received at some point prior to her outcry against appellant. We will affirm.

---

[1] See TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West Supp. 2012).

Factual and Procedural History

Complainant, H.G., became familiar with appellant in 2007 with the understanding that he is a distant relative of hers. On weekends, H.G., age eleven at the time, and her younger sister, who was then ten years old, would stay overnight at the house in which appellant, appellant's girlfriend Amanda, and Amanda's four-year-old daughter lived; the sisters stayed there to babysit the four-year-old girl while appellant and Amanda worked at nightclubs. H.G. testified that, on eight to ten occasions beginning in July 2010 and ending in December 2010, when appellant returned home from work, he came into the room in which H.G. was sleeping and digitally penetrated her sexual organ.

In December 2010, upon H.G. and her sister's return from appellant's house, H.G. was, according to her family, uncharacteristically withdrawn and quiet, behavior which prompted questions from her family. Ultimately, H.G. disclosed to her then-fifteen-year-old brother that appellant had inappropriately touched her. She confirmed the touching in a conversation with her mother's boyfriend. At a later interview at the children's advocacy center, she would disclose that on the weekend in question, appellant had gone beyond digital penetration and had penetrated her sexual organ with both his mouth and his penis.

Appellant was arrested and charged with three counts of aggravated sexual assault of a child. The Potter County jury ultimately acquitted appellant of charges alleging penetration by mouth and by penis but convicted him for aggravated sexual assault of H.G. by digital penetration. The jury assessed punishment, enhanced by two

prior felony convictions, at life imprisonment. Appellant appeals his conviction and contends that the trial court abused its discretion by excluding certain evidence pertaining to a text message that was sent to H.G.'s cell phone some time prior to her outcry against appellant. For the reasons which follow, we will overrule appellant's sole point of error and affirm the trial court's judgment of conviction.

## Standard of Review

We review the trial court's decision to exclude or admit evidence for an abuse of discretion. Montgomery v. State, 810 S.W.2d 372, 379 (Tex.Crim.App. 1990) (en banc) (citing Marras v. State, 741 S.W.2d 395, 404 (Tex.Crim.App. 1987) (en banc)). The test for abuse of discretion is a question of whether the trial court acted without reference to any guiding rules and principles. Id. at 380. We will uphold the trial court's ruling "so long as the result is not reached in an arbitrary or capricious manner." Id. Further, we will sustain the trial court's decision if that decision is correct on any theory of law applicable to the case. Romero v. State, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990) (en banc).

## Applicable Law and Analysis

We begin our discussion with a summary of the testimony which came into evidence, that which did not, and that which appellant wanted to come into evidence.

### H.G.'s testimony

Defense counsel represented what he believed to be the contents of the text message at issue and that he believed the brother had intercepted the message when

3

he approached the bench to seek leave to elicit H.G.'s testimony regarding the text message. Outside the presence of the jury, H.G. testified that her mother confronted her after her return that weekend regarding the text message. H.G. testified that she did not know who sent the message. She explained, too, that she did not recall the contents of the message, nor did she recall whether her mother ever disclosed the exact contents to her. H.G. also testified, seemingly in contradiction to her previous testimony, that the discussion regarding the text message did not occur immediately before her outcry against appellant. The trial court disallowed defense counsel's cross-examination of H.G. as to the text message, and the jury was brought back in.

Officer's testimony

Defense counsel succeeded in introducing some testimony regarding the text message by way of cross-examination of the detective assigned to the case, Sergeant Kyle Hawley. In response to defense counsel's questions, Hawley testified that H.G.'s brother expressed concern regarding the text message during an interview following H.G.'s outcry. Defense counsel was careful to explain to the trial court at a bench conference that he was not seeking to go into the contents of the text message at that time. Hawley testified that H.G.'s brother was concerned over the message and added that H.G.'s brother explained in the interview that the text message discussion led to the outcry. Hawley could not initially recall who had received the text message but explained that the brother did mention the message. According to his notes, Hawley later clarified, H.G. received the message. Hawley could not testify as to the identity of the sender other than it was "from a boy."

4

Brother's testimony

H.G.'s older brother explained that H.G. was acting uncharacteristically quiet and withdrawn upon her return from appellant and Amanda's house that Sunday, behavior which prompted questions from her family. Again, explaining that he did not seek testimony as to "the specifics" relating to the text message, defense counsel sought permission to question H.G.'s brother about the text message. Defense counsel limited his requests to questions regarding the mother's reaction that allegedly led to H.G.'s outcry regarding appellant. H.G.'s brother testified before the jury that, right before H.G. returned home that weekend, he and their mother had a discussion regarding the text message that H.G. received from a boy. He testified that their mother was mad about the text message. Moments later, however, the brother contradicted himself by testifying that he could not recall when he had that conversation with their mother regarding the text message. H.G.'s brother went on to testify twice that he and his mother had *not* been discussing the text message the day H.G. returned and ultimately made her outcry against appellant.

Mother's boyfriend's testimony

Defense counsel attempted to elicit testimony from the mother's boyfriend regarding the receipt of the text message. In the face of the State's objections and the trial court's insistence on an explanation of the relevance of the testimony, defense counsel abandoned that line of questioning as to the mother's boyfriend.

<u>Mother's testimony</u>

Defense counsel again sought to cross-examine a witness—this time, H.G.'s mother—about the text message. Outside the presence of the jury, the mother testified that she knew of a text message H.G. received from a boy before the weekend of the alleged assault. She explained that, as a result of questionable text messaging, H.G. was not permitted to take her cell phone to appellant and Amanda's house the weekend in question. She explained that the confrontation regarding text messaging occurred months or weeks before the weekend at issue, and reaffirmed her position by reiterating that it was as a result of her discovery of text messages that H.G. could not take her cell phone with her the weekend in question.

H.G.'s mother continued that it was not just one message with which she took issue. In fact, she explained, there were several messages that H.G. "had no business texting about." Mother attempted to surmise to which text message defense counsel was alluding when she made reference to "[t]he one I bet you're probably right now wanting to know about." H.G.'s mother then went on to relate, in uncertain terms, the contents of a message, contents which varied from the contents defense counsel had earlier represented to the trial court. H.G.'s mother reiterated that there was no conversation about the text message the weekend of the assault; everyone had known about the text message(s) weeks before the discussions that weekend which led up to H.G.'s outcry. Ultimately, the trial court disallowed any questioning of H.G.'s mother regarding the text message.

Discussion

There is some discussion in the record regarding the application of the rape shield rule. See TEX. R. EVID. 412. However, it appears that the trial court's exclusion of the evidence related to its relevance in more general terms. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Moreover, the trial court retains "broad discretion to impose reasonable limits on cross-examination to avoid, *inter alia*, harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." Lagrone v. State, 942 S.W.2d 602, 613 (Tex.Crim.App. 1997) (en banc).

Presuming without deciding that appellant's offer of proof was specific enough to preserve the issue for appellate review,[2] we conclude that the trial court did not abuse its discretion by disallowing further testimony regarding the text message when the number, contents, sender, timing, recipient, and bearing on the allegations at bar were unclear from the record. Further, the trial court heard some evidence that the message about which defense counsel sought to cross-examine had no bearing on developments

---

[2] We believe such a presumption is not unreasonable here, not only in the interest of fairness, but also because it would appear that the trial court noted appellant's exception and an understanding of appellant's objection to the exclusion of the evidence. We do note, however, that in a strict application of the preservation rules, appellant's offer of proof was, at least, shaky because the contents of the text message or messages remains unclear from the record before us. When a trial court excludes evidence, the party is obligated to make an offer of proof to the trial court explaining the substance of the excluded evidence or testimony. TEX. R. EVID. 103(a)(2); Guidry v. State, 9 S.W.3d 133, 153 (Tex.Crim.App. 1999).

on the weekend of H.G.'s outcry, that the confrontation about the text message(s) had long-since passed and played no part in prompting the conversation which culminated in H.G.'s outcry.

The record indicates that the evidence appellant wanted the jury to hear—that H.G. may have received a sexually suggestive text message sometime around that weekend and that the text message may have prompted a discussion during which H.G. disclosed that appellant had abused her—the jury did, in fact, hear. To the extent such evidence could go to H.G.'s motive to fabricate her allegations of abuse, the jury heard that evidence, though perhaps from fewer witnesses and in less detail than appellant would have preferred.

We cannot discern when H.G. received the message, nor do we know when her mother confronted her about the message(s). Even assuming H.G. received the text message and that she received it in close temporal proximity to her outcry, the contents of the message remain unclear. Though there is some evidence that suggests that inappropriate text messages were a topic of discussion at the close of the weekend in question and that such discussion ultimately concluded with H.G.'s disclosure of appellant's assault of her, we note that such evidence was, in fact, before the jury; the trial court did not act without guiding rules or principles when it decided to exclude additional evidence regarding a text message that H.G. may have received at some point prior to her outcry from someone presumably other than appellant saying something of a sexually suggestive nature. Indeed, it would appear that the trial court excluded any additional evidence beyond what was presented to the jury as speculative

and irrelevant. See TEX. R. EVID. 401. And its ruling lies well within its "broad discretion" to reasonably limit cross-examination in such a way as to avoid "harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." See Lagrone, 942 S.W.2d at 613.

The trial court did not abuse its discretion by excluding additional evidence regarding the receipt of the text message. See Montgomery, 810 S.W.2d at 379–80. Accordingly, we overrule appellant's sole point of error.[3]

Conclusion

Having overruled appellant's sole point of error, we affirm the trial court's judgment of conviction.

Mackey K. Hancock
Justice

Do not publish.

---

[3] To the extent that appellant's point of error may be read as limited to a challenge of the trial court's exclusion only of the contents of the text message, we likewise overrule his contention for the same reasons as expressed above.