

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-21-00154-CR

PHILLIP VELAZQUEZ, APPELLANT

V.

THE STATE OF TEXAS

On Appeal from the 364th District Court
Lubbock County, Texas,
Trial Court No. 2017-411,477, Honorable William R. Eichman II, Presiding

January 9, 2023

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant, Phillip Velazquez, was convicted by a jury of aggravated robbery, sentenced to forty-five years of confinement, and assessed a $10,000 fine.[1]  On appeal, he asserts the trial court abused its discretion by (1) denying his motion for a mistrial after a witness's outburst in court and (2) admitting a text message exchange between two co-defendants.  We affirm the trial court's judgment.

---

[1] *See* TEX. PENAL CODE ANN. § 29.03(a) (2), (b) (first-degree felony).

**Background**

In August 2019, an indictment was returned alleging that on or about January 27, 2017, Appellant intentionally or knowingly threatened or placed Jose Carmona in fear of imminent bodily injury or death using or exhibiting a deadly weapon (a firearm) while in the course of committing theft of property with intent to obtain or maintain control of said property.

In March/April 2021, a five-day jury trial was held. The principal focus at trial was whether Appellant could be identified as one of the persons involved. The evidence showed in relevant part that on January 27, 2017, Joe Lopez, a former sergeant with the Texas Department of Criminal Justice, observed a "brownish gold" Chevrolet Tahoe[2] with tinted windows and shiny rims stopped at a stop sign in Lubbock, Texas. With its headlights turned off, the vehicle turned down a street, and then an alley, toward a restaurant called Picantes. Lopez found the vehicle's maneuvers to be unusual, so he flashed his lights to let them know he was watching. Lopez observed two passengers exit the Tahoe and walk towards the rear of the restaurant. After about a minute, Lopez drove to the front of the restaurant; the vehicle drove off at a "high rate of speed." Lopez attempted to follow but realized he could not catch up. He telephoned 9-1-1.

Meanwhile, three men carrying guns entered Picantes as employees were preparing to close. One gunman wore a ski mask; the other two were maskless. The gunmen were threatening employees with their weapons and barking commands as the

---

[2] Subsequent testimony from Detective Christopher Jenkins revealed that Appellant's brother, Joseph Gonzalez, owned a 2007 Chevrolet Tahoe. An admitted photo from Joseph's Facebook account permitted the jury to compare the image of Joseph's Tahoe to the vehicle near the crime scene on January 27, 2017.

employees and patrons were lined up against a wall. Jose Carmona was required to kneel as a gun was put to his head. Each gunman had a role: one watched the front door, a second gathered the employees and patrons, and a third collected their wallets and cellphones. Reactions to the robbery included fear, crying, loss of breath, and panic.[3] When the robbery was complete, the gunmen fled through the back door.

The restaurant was outfitted with security cameras that captured video of the robbery. Portions of the video were aired on the local news with law enforcement's request for assistance. One person who called in a tip was Correna Barela, the sister of Appellant and Joseph Gonzalez.[4] When police came to her home, she identified the Appellant wearing a gray or light blue hooded shirt as the person in a photo shown by police; the photo was a screen capture of the restaurant surveillance video at the time of the robbery. Barela also identified the Appellant in several photos posted on social media, giving the jury an opportunity to compare images.

Randy Villarreal is the father of Damian Villarreal, another person convicted for his role in the armed robbery. Under subpoena, Randy testified seeing Appellant (who he also knew as "Felipe"), his son, and Joseph Gonzalez sitting in a Chevy Tahoe or GMC Yukon[5] in his driveway on the night before the robbery. A few days after the robbery, Damian told his father that he had "messed up" and directed him to watch the news. From the footage showing the security video Randy recognized Appellant, Joseph, and a

---

[3] Victims inside the restaurant offered varying descriptions of the gunmen.

[4] Joseph was also convicted for his role in the armed robbery.

[5] Earlier in the trial, the jury heard Lopez's testimony that Tahoes and Yukons were essentially the same model vehicle.

masked person.  Certain that the person wearing the mask was his son, Randy reported the information to the police.

*Issue One*

At trial, the State called Appellant's brother, Joseph Gonzalez, as a witness.  After Joseph was sworn in, the following exchange took place before the jury:

> [JOSEPH]: Your Honor, I would like to plead the Fifth, Your Honor.
>
> THE COURT: Okay.  You can't because you've already – you've been convicted, and there's nothing to plead the Fifth on on this right now.
>
> [JOSEPH]: Well, I don't -- I choose not to speak, Your Honor, and I --
>
> THE COURT: Well, you can choose --
>
> [JOSEPH]: And I hold my right to plead the Fifth today.
>
> THE COURT: Okay.  All right. Let him answer -- ask a question, and then you can answer.
>
> [JOSEPH]: Well, like I said, Your Honor, I choose to plead the Fifth.
>
> THE COURT: I understand, but you have to do that after the question is asked.  Okay?
>
> [BY THE STATE'S COUNSEL]: Mr. Gonzalez, can you state your full name for the record?
>
> [JOSEPH]: I plead the Fifth.

After the court instructed Joseph to answer the question and admonished that it could hold him in contempt of court for each answer refused, Joseph replied that the court could "hold me in contempt a hundred years, but I'm going to tell you guys, people of the jury, these people are crooked."  The court then removed Joseph from the courtroom.

4

After a bench conference,[6] and Joseph was returned to the courtroom, the witness identified the Appellant as his brother. Upon being asked to conduct an in-court identification of Appellant, Joseph again resisted an answer, blurting out, "you guys gave me 60 years." Whereupon a bench conference occurred. The trial court found that Joseph's outburst was not provoked by the State and that the statement was non-responsive to the question. The court instructed the jury to disregard the statement and denied Appellant's motion for a mistrial.

Appellant contends there was a reasonable probability Gonzalez's outburst interfered with the jury's verdict and could not be cured by the trial court's instruction to disregard. We disagree.[7] A mistrial halts the trial proceedings when error is so prejudicial that expending further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). The remedy is appropriate only in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

The law regarding trial witness outbursts largely tracks the authority governing whether conduct by bystanders requires a mistrial.[8] Typically, such outbursts do not

---

[6] Appellant's counsel moved for a mistrial "based on the outburst that's happened already," but did not object to the trial court's comment about Joseph's conviction.

[7] We review the denial of a motion for mistrial under an abuse of discretion standard. *Lesec v. State*, No. 07-00-0310-CR, 2001 Tex. App. LEXIS 4793, at *9 (Tex. App.—Amarillo July 18, 2001, no pet.) (citing *Ladd*, 911 S.W.3d at 567). An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

[8] *See Stahl v. State*, 749 S.W.2d 826, 829 (Tex. Crim. App. 1988). *But see Robinson v. State*, No. AP-76,535, 2013 Tex. Crim. App. Unpub. LEXIS 658, at *18 (Tex. Crim. App. June 5, 2013) (not designated for publication) (suggesting, in *dicta*, a difference in how outbursts by bystanders and witnesses would be treated).

require a new trial unless the defendant shows a reasonable probability that the conduct interfered with the jury's verdict. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Landry v. State*, 706 S.W.2d 105, 112 (Tex. Crim. App. 1985). Because we ordinarily presume that a jury will follow the judge's instructions, the trial court's instruction to disregard an outburst is generally sufficient to cure any alleged prejudicial effect. *See Gamboa*, 296 S.W.3d at 580. The defendant bears the burden to rebut the presumption that the curative instruction was adequate. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). .

In this case, the jury had already heard the trial court's remark that Joseph had been convicted of a crime; there was no timely objection to the statement. Joseph's outburst indicating he had been convicted of something merely repeated what was already before the jury. This is not an instance where it appears the State's attorney asked a question reasonably calculated to elicit an inflammatory outburst, as was observed in *Stahl*, 749 S.W.2d at 830. Moreover, we find no record evidence to rebut the presumption that the trial court's curative instruction was adequate. In light of these circumstances, as well as the other testimony implicating the Appellant, we find no adequate basis to hold the trial court abused its discretion in denying a mistrial. Appellant's first issue is overruled.

*Issue Two*

Appellant next contends the trial court abused its discretion by admitting a text message between Damian and Joseph that occurred in the early morning hours after the

robbery. The message stated, "Ay wey minks took off I told him you was on your way wey."[9] Appellant argues the text message constitutes inadmissible hearsay.

Hearsay is "a statement, that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d). Conversely, out-of-court statements that are not being offered to prove the truth of the matter asserted in the statement (i.e., offered for some other reason) does not constitute hearsay. *See Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999). We review a trial court's admission or exclusion of evidence for abuse of discretion. *Cunningham v. State*, 877 S.W.2d 310, 313 (Tex. Crim. App. 1994). Under that standard, we may not reverse a trial court if its ruling is within the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996).

The record elsewhere identifies "minks" as referring to the Appellant. We agree with the State, however, that the truthfulness of a statement about whether "minks" had taken off, or not, is of no consequence to the issues in the case. Rather, as the State explained, the evidence was offered for the purpose of showing "these three people were in communication via the phone numbers," and that "minks" was a part. Because the evidence was being used for a purpose other than to prove the truth of the message's contents, we hold the message did not constitute inadmissible hearsay. *See Ellis v. State*, 517 S.W.3d 922, 930 (Tex. App.—Fort Worth 2017, no pet.) (holding that text messages sent on victim's phone after his murder were not hearsay because they were not offered

---

[9] The State's earlier evidence indicated Appellant was known by the nickname "mink."

7

for purpose of proving their truth but to show the appellant's connection to person possessing the phone).  Appellant's second issue is overruled

Conclusion

All issues on appeal having been overruled, we affirm the judgment of the trial court.

Lawrence M. Doss<br>Justice

Do not publish.